UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| FYANCE DAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14-2020 |
| | ) | |
| MICHAEL D. DOWNEY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, proceeding pro se and presently incarcerated at Dixon Correctional Center, brings the present lawsuit pursuant to 42 U.S.C. § 1983 alleging failure to protect from harm, deliberate indifference to a serious medical need, procedural due process, and retaliation. The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment (Doc. 29). The motion is denied in part, and granted in part.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on February 6, 2014. (Doc. 1). In its Merit Review Opinion, the Court found that Plaintiff stated claims for failure to protect from harm, deliberate indifference to a serious medical need, procedural due process, and retaliation. (Doc. 9). Defendants filed a motion for summary judgment on January 21, 2015. (Doc. 29). Plaintiff requested, and was granted, additional time to respond to the Defendants' motion. The deadline for Plaintiff's response was April 16, 2015. As of the date of this Order, Plaintiff has not filed a response, nor has he filed a motion requesting additional time to do so. Therefore, pursuant to Rule 56(e)(2) of the Federal Rules of Civil Procedure, the Court will consider the facts alleged by the Defendants in their motion as undisputed for purposes of this ruling. *See* FED. R. CIV. P.

56(e)(2) (if a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion).

## FACTS

At all times relevant to this lawsuit, Plaintiff was a pretrial detainee at Jerome Combs Detention Center ("JCDC"). On January 8, 2013, correctional officers at JCDC placed Plaintiff and several other inmates in a holding cell for purposes of attending a video court hearing. Each inmate was restrained by handcuffs and a belt that immobilized the inmate's arms. Upon noticing a particular inmate nearby, Plaintiff informed Defendant Bartucci that he (Plaintiff) could not be in the room. Plaintiff did not explain the reason why, nor did Plaintiff identify any specific inmate as posing an excessive risk of harm to Plaintiff's person. Furthermore, individuals on Plaintiff's "no contact" list were not present in the room. Based on these facts, or lack thereof, Defendant Bartucci took no action on Plaintiff's concerns, and subsequently left the room unattended. An altercation between Plaintiff and another inmate ensued.

A short time after the incident, at his request, Plaintiff was treated in the healthcare unit. Plaintiff received ice packs, pain medication, and antibiotic cream to treat the swelling and superficial scratches Plaintiff sustained during the altercation. Plaintiff names no medical defendants in this lawsuit.

Plaintiff was later charged and found guilty of two offenses related to the January 2013 incident: fighting; and, using provoking words or gestures. Prior to the disciplinary hearing, Plaintiff was permitted to submit a list of witnesses to be interviewed. At the hearing, Plaintiff was allowed to provide testimony in his defense and was allowed to submit a written statement to that effect. Plaintiff received segregation as punishment for these violations. After attempting the use the grievance process at the Jail, Plaintiff filed the present lawsuit.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

### *Heck v. Humphrey* and the Prisoner Litigation Reform Act

Defendants argue that Plaintiff's lawsuit is barred pursuant to the Prisoner Litigation Reform Act's (PLRA) exhaustion requirement and by the procedural limitations of *Heck v. Humphrey*, 512 U.S. 477 (1994). Both defenses are similar in that they limit the recourse available to a prisoner under § 1983 until certain preconditions are met: the PLRA requires that a prisoner exhaust all available administrative remedies prior to filing suit, *see* 42 U.S.C. § 1997e(a) (2013); *Heck* prevents a prisoner from challenging a fact or duration of confinement (i.e. a conviction) "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489. Either defense, if applicable, prevents a court from reaching the merits of a prisoner's § 1983 claim. Thus, the Court will address these arguments first.

## *Heck v. Humphrey*

"[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . ." *Heck*, 512 U.S. at 487. If it would, a plaintiff has no cause of action under § 1983 "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id*. at 489. This requirement "is necessary to prevent inmates from doing indirectly through damages actions what they could not do directly by seeking injunctive relief—challenge the fact or duration of their confinement without complying with the procedural limitations of the federal habeas statute." *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). The *Heck* doctrine extends to prison disciplinary actions. *Edwards v. Balisok*, 520 U.S. 641, 644-48 (1997).

Defendants argue that Plaintiff's claims are barred under *Heck* because Plaintiff has not successfully challenged the discipline he received as a result of the January 8, 2013 incident. On the record before the Court, this is not fatal to Plaintiff's claims. Plaintiff admits his guilt to the disciplinary infractions and otherwise does not make allegations that would be inconsistent with, or necessarily imply the invalidity of, the prison disciplinary proceedings. JCDC rules prohibit "provoking or participating in a fight"; and, using provoking words or gestures that "may anger, irritate or excite another into performing a prohibited act." (Doc. 29-4 at 11, 13). Under this language, a failure-to-protect plaintiff is always guilty of "participating" in a fight or other attack giving rise to the claim for monetary damages under § 1983, as even a plaintiff who remains passive and nonviolent throughout the attack would still be participating in the fight. Moreover, assuming the assailant had some form of subjective motivation for launching the attack, anything the plaintiff did, intentional or otherwise, to create the motivation would violate the rule against

provocation. Thus, a failure-to-protect claim could coexist with the rules violations so long as a plaintiff does not allege facts that necessarily imply invalidity of the committee's findings, which Plaintiff does not. Therefore, Plaintiff's claims are not barred under the *Heck* doctrine.

**PLRA Exhaustion Requirement**

Failure to exhaust is an affirmative defense, and therefore the burden of proof lies with the defendants. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). The Court must hold an evidentiary hearing if a disputed issue of material fact exists, *see Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), but where none is present, an evidentiary hearing is unnecessary and the issue of exhaustion may be decided as a matter of law. *Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).

The Prison Litigation Reform Act (PLRA) provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The purpose of this requirement is to "alert the state to the problem and invite corrective action." *Turley*, 729 F.3d at 649 (internal citations omitted). The Seventh Circuit has adopted a strict compliance standard to exhaustion, and to exhaust remedies "a prisoner must properly use the prison's grievance process." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). If the prisoner fails to follow the grievance procedures, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Id.*; *see Dole*, 438 F.3d at 809 (quoting same). "The 'applicable procedural rules' that a prisoner must properly exhaust are defined not by the PLRA, but by the prison grievance

process itself." *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Plaintiff did not exhaust his administrative remedies pursuant to the JCDC rules for filing grievances. Specifically, Plaintiff did not submit a letter to the Illinois Department of Corrections Jail and Detention Standards Unit as indicated in the JCDC Handbook. (Doc. 29-4 at 14-15). Nonetheless, the Court must determine whether Plaintiff's failure to exhaust was the result of his own doing or if jail officials effectively prevented him from utilizing the process. *Pavey*, 544 F.3d at 742. If a prisoner did all he could do to avail himself of the process, and the failure to exhaust was through no fault of his own, it cannot be said that the prisoner failed to exhaust his available remedies. *Dole*, 438 F.3d at 811.

In support of their motion, the Defendants provided copies of grievances Plaintiff filed in response to this incident. (Doc. 29-4 at 48-52). In two of the grievances, Plaintiff mentioned the January 8, 2013 incident. *Id.* at 48-49. Plaintiff also mentioned his desire to receive medical treatment from an outside medical care provider for the injuries sustained during the altercation. *Id.* at 49. There are no indications that JCDC officials responded to either of these grievances. In his affidavit, Defendant Kolitwenzew states that it was his responsibility at the time to review inmate grievances. (Doc. 29-5 at 16, ¶ 13). Though he states that he answered Plaintiff's grievances, the response section of the grievances mentioned above are blank. It does not appear Defendant Kolitwenzew ever responded to these particular grievances. Furthermore, Plaintiff's statement in his deposition that he had never seen a grievance response from Defendant Kolitwenzew until the day of the deposition lends support to this conclusion. Pl. Dep. 245:23-246:3. The Court finds that JCDC officials prevented Plaintiff from completing the grievance process as a response never given is not one that can be appealed. Accordingly, Defendants'

argument regarding the PLRA's exhaustion requirement must fail. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("[W]e refuse to interpret the PLRA 'so narrowly as to . . . permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" (internal quotations omitted)).

## The Alleged Constitutional Violations

As Plaintiff's claims are not barred by the *Heck* doctrine or the PLRA exhaustion requirement, the Court now addresses the alleged constitutional violations. As discussed below, the Court finds that no reasonable juror could conclude that any defendant named in the present lawsuit violated Plaintiff's constitutional rights.

## Defendants Downey and Kolitwenzew

During the relevant time period, Defendants Downey and Kolitwenzew were the Chief of Corrections and Assistant Chief of Corrections at JCDC, respectively. As hierarchies go, these defendants were at the top and responsible for the general supervision of the jail operations. There are no allegations that these defendants participated directly in the alleged constitutional violations.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citations omitted). A plaintiff must plead that each official, "though the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A government official may not be held liable under § 1983 on a theory of respondeat superior, that is, for the unconstitutional acts of his or her subordinates. *Id*. To be held liable, a government supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye…."

argument regarding the PLRA's exhaustion requirement must fail. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("[W]e refuse to interpret the PLRA 'so narrowly as to . . . permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" (internal quotations omitted)).

## The Alleged Constitutional Violations

As Plaintiff's claims are not barred by the *Heck* doctrine or the PLRA exhaustion requirement, the Court now addresses the alleged constitutional violations. As discussed below, the Court finds that no reasonable juror could conclude that any defendant named in the present lawsuit violated Plaintiff's constitutional rights.

## Defendants Downey and Kolitwenzew

During the relevant time period, Defendants Downey and Kolitwenzew were the Chief of Corrections and Assistant Chief of Corrections at JCDC, respectively. As hierarchies go, these defendants were at the top and responsible for the general supervision of the jail operations. There are no allegations that these defendants participated directly in the alleged constitutional violations.

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citations omitted). A plaintiff must plead that each official, "though the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A government official may not be held liable under § 1983 on a theory of respondeat superior, that is, for the unconstitutional acts of his or her subordinates. *Id*. To be held liable, a government supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye…."

*Vance*, 97 F.3d at 993 (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). In addition, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Plaintiff admits that Defendant Downey did not have personal involvement in the alleged violations. Pl. Dep. 70:8-13. As it relates to Defendant Kolitwenzew, Plaintiff stated he only sued him because Defendant Kolitwenzew never returned any of Plaintiff's grievances, not because of any personal involvement. *Id.* 72:13-19. There is no evidence to show that these defendants personally participated in any of the alleged constitutional violations and, therefore, cannot be held liable under § 1983. All claims against them should be dismissed.

## Failure to Protect

Plaintiff alleges that prison officials failed to protect him from harm by leaving unsupervised the room in which Plaintiff and the other inmates remained while awaiting their respective court appearances. As a pretrial detainee, Plaintiff's failure to protect claim is governed by the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment prohibition against cruel and unusual punishment. *Mayoral v. Sheahan*, 245 F.2d 934, 938 (7th Cir. 2001). Despite this distinction, there exists "little practical difference between the two standards." *Id*. (quoting *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000)).

To succeed on a failure to protect claim, a plaintiff must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and, (2) prison officials acted with "deliberate indifference" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For purposes of satisfying the first prong, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Id.*

at 843. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A plaintiff "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (quoting *McGill v. Duckworth*, 944 F.3d 344, 349 (7th Cir. 1991)). Liability attaches where "deliberate indifference by prison officials effectively condones the attack by allowing it to happen…." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996).

The only defendant Plaintiff names that could potentially be liable for failure to protect from harm is Defendant Bartucci. Plaintiff informed Defendant Bartucci that he could not be in the room, but failed to identify a specific threat of harm or even an inmate that presented a such a risk of harm to Plaintiff; nor is there evidence that prisoners similarly situated to Plaintiff faced a substantial risk of harm in that situation. For a prison official to act with deliberate indifference, he must have knowledge of an excessive risk. Given Plaintiff's failure to identify this risk and the lack of evidence to suggest that Defendant Bartucci could have otherwise appreciated it, no reasonable juror could conclude that Defendant Bartucci is liable for failure to protect.

### Deliberate Indifference to a Serious Medical Need

As stated above, Plaintiff's claims are analyzed under the Fourteenth Amendment. To succeed on a claim for inadequate medical care, the Plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)

(internal quotations omitted). In evaluating the seriousness of a medical condition, the court evaluates several factors: (1) whether failure to treat the condition would result in further significant injury or the unnecessary and wanton infliction of pain; (2) whether a reasonable doctor or patient would find the alleged injury worthy of comment or treatment; (3) the existence of a medical condition that significantly affects daily activities; and, (4) the existence of any chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Plaintiff suffered from swelling and superficial scratches as a result of his altercation with another inmate. Plaintiff has not provided evidence that the injuries were life-threatening or posed a risk that Plaintiff would suffer from an unnecessary amount of pain. From the evidence provided, no reasonable juror could conclude that Plaintiff suffered from a serious medical need. *Cf. Roberts v. Samardvich*, 909 F. Supp. 594, 606 (N.D. Ind. 1995) (one-inch laceration was not a "serious medical need" absent evidence that the wound was life-threatening or posed a risk of needless pain or lingering disability, and where laceration bled only for a short time and was treated with hydrogen peroxide and a bandage).

Even if Plaintiff suffered from a serious medical need, there is no evidence that any defendant in this case acted with deliberate indifference. Plaintiff did not name any medical providers as defendants, and the records show that Plaintiff was provided medical treatment within a reasonable amount of time after the altercation. Insofar as Plaintiff disagreed with the treatment and sought outside medical care, the Constitution does not require a specific course of treatment and a mere disagreement with the chosen course, standing alone, is not sufficient to raise constitutional concerns. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Therefore, the Court finds that no reasonable juror could find that any defendant acted with deliberate indifference to a serious medical need.

**Procedural Due Process**

A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and, (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994). Placement into more restrictive conditions, including disciplinary segregation, could create a liberty interest if such conditions impose an "atypical and significant hardship on [the] inmate in relation to ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To examine whether a constitutional violation has occurred, courts look to "the combined import of the duration of the segregative confinement *and* the conditions endured." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (internal quotations omitted). As a general rule, a short duration of disciplinary segregation, standing alone, will not give rise to a constitutional violation. *Id.*

In holding that a 30-day period in disciplinary segregation did not implicate a due process liberty interest, the *Sandin* court examined whether the segregated confinement in question exceeded "similar, but totally discretionary, confinement in either duration or degree of restriction," whether placing the inmate in segregation worked a "major disruption in [the inmate's] environment," and whether the disciplinary segregation affected the duration of his sentence. *Sandin*, 515 U.S. at 486. As it applies to the present case, there is no evidence that Plaintiff suffered exceptionally harsh conditions while housed in segregation; nor is there evidence that this amounted to a major disruption in Plaintiff's environment or extended the duration of Plaintiff's confinement at JCDC. Given the absence of these factors, no reasonable juror could conclude that Plaintiff suffered an "atypical and significant" deprivation. Without such a deprivation, the procedural protections of the Due Process Clause do not trigger and

Plaintiff's allegation that JCDC officials failed to interview his listed witnesses does not rise to the level of constitutional scrutiny. *See Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) ("In the absence of such "atypical and significant" deprivations, the procedural protections of the Due Process Clause will not be triggered."). Furthermore, Plaintiff's placement in discretionary segregation prior to the disciplinary hearing does not give rise to a protected liberty interest. *See Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (discretionary segregation imposed for administrative, protective, or investigative purposes is not atypical and "an ordinary incident of prison life that inmates should expect to experience during their time in prison.").

## Retaliation

To prevail on a retaliation claim, the Plaintiff must show that he engaged in activity protected by the First Amendment; he suffered a deprivation that would likely deter First Amendment activity in the future; and, the First Amendment activity motivated the decision to take retaliatory action. Bridges v. Gilbert, 557 F.3d 541, 553 (7th Cir. 2009). "[A] prison official may not retaliate against a prisoner because that prisoner filed a grievance." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). The adverse action need not independently violate the Constitution, rather "a complaint need only allege a chronology of events from which retaliation may be inferred." *Id.*

Plaintiff states in his deposition that as soon as he began writing grievances, he was taken to segregation. Pl. Dep. 71:14-15. Even if the Court assumes that the JCDC officials were motivated by Plaintiff's use of the grievance process and not by a desire to place Plaintiff in segregation pending investigation of the events that occurred on January 8, 2013, there is no evidence that any deprivation Plaintiff suffered would likely deter future First Amendment activity. According to Plaintiff, he was placed in segregation on January 9, 2013, one day after

the incident. After being placed in segregation, Plaintiff filed at least two (2) grievances. (Doc. 29-4 at 50-52). From the record now before the Court, it appears that placement in segregation did not hinder Plaintiff's ability to utilize the grievance process. Therefore, the Court finds that no reasonable juror could conclude that JCDC officials retaliated against the Plaintiff.

**Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 29) is denied as it relates to failure to exhaust administrative remedies and the procedural limitations of *Heck v. Humphrey*, but granted on all other grounds.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motion for Summary Judgment is GRANTED [29]. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs. Plaintiff remains responsible for the $350.00 filing fee.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith.** See **Fed. R. App. P. 24(a)(1)(c);** *see also Celske v Edwards*, **164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith.");** *Walker v O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 10th day of June, 2015.

_s/David G. Bernthal_
DAVID G. BERNTHAL
UNITED STATES MAGISTRATE JUDGE
